# United States District Court
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL ACTION NO. 3:20-CR-292-S |
| DANTAVIOUS POWELL (1) | § § | |

### ORDER ACCEPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

On December 28, 2022, the Court referred Defendant Dantavious Powell's Motion to Dismiss the Indictment Due to Violation of Due Process ("Motion") [ECF No. 40] to United States Magistrate Judge Renée Harris Toliver for consideration. The Court received the Findings, Conclusions, and Recommendation of the United States Magistrate Judge ("Findings, Conclusions, and Recommendation") [ECF No. 43], to which Defendant filed objections. *See* Defendant's Objections to Magistrate's Report and Recommendations Denying Defendant's Motion to Dismiss the Indictment Due to Violation of Due Process ("Objection"), ECF No. 46. Having reviewed *de novo* the Findings, Conclusions, and Recommendation, the Motion, the Government's Opposition to the Defendant's Motion to Dismiss the Indictment ("Opposition") [ECF No. 42], Defendant's Objection, the Government's Response to the Defendant's Objection to the Magistrate's Report and Recommendation Denying the Defendant's Motion to Dismiss the Indictment ("Response") [ECF No. 47], and the applicable law, the Court **ACCEPTS** the Findings, Conclusions, and Recommendation and **DENIES** Defendant's Motion for the reasons stated below.

### I. BACKGROUND

Defendant was charged with a single count of Possession with Intent to Distribute a Controlled Substance in violation of 21 U.S.C. § 841(a)(1). *See* Complaint, ECF No. 1; Indictment,

ECF No. 10. In an Affidavit in Support of Application for Complaint ("Affidavit") [ECF No. 1], Michael Reuler, a now-retired Task Force Officer ("TFO") with the Federal Bureau of Investigation, swore to facts supporting probable cause that Defendant knowingly possessed methamphetamine and marijuana after an Undercover Employee ("UCE") of the Dallas Police Department purchased approximately 11 grams of marijuana, 20 grams of methamphetamine, and 4 grams of Alprazolam from Defendant. *See* Affidavit ¶ 7. According to the Affidavit, the "presumptive field test" of the seized drugs was positive for methamphetamine and marijuana. *See id.* Further, the Affidavit stated "[a]ll the undercover drugs buys with [Defendant] were audio/video recorded or a combination of the two." *Id.* TFO Reuler again confirmed that the alleged transactions were recorded on audio, video, or both during grand jury proceedings. *See* Response ¶ 2.

In the Motion, Defendant states that he was not provided with the recordings. *See* Motion 4. In preparation for its response, the Government discovered that audio/video recordings of the drug purchases existed, TFO Reuler "watched the recordings of the those transactions before swearing to the criminal complaint," and "despite best efforts" to locate the recordings in January 2023, the Government has been unable to find them. Opposition ¶ 4. Defendant argues that the failure to provide him with this evidence violates due process, as "there is a great possibility that the recordings provide exculpatory or impeachment evidence," and are, "at minimum, potentially useful evidence." Objection 2-3. Further, Defendant asserts that the Government "showed bad faith in not keeping such recordings in accordance with the department's standard procedure." *Id.* at 3.

## II. LEGAL STANDARD

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). If, however, the evidence is only "potentially useful," "failure to preserve [it] does not constitute a denial of due process of law" "unless a criminal defendant can show bad faith on the part of the police." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). Therefore, to establish a violation of due process, Defendant must demonstrate the "impermissibly withheld evidence" is either "(1) material and exculpatory or (2) only potentially useful, in combination with a showing of bad faith on the part of the government." *Bower v. Quarterman*, 497 F.3d 459, 476 (5th Cir. 2007) (citation omitted).

## III. ANALYSIS

### A. *Materiality of Evidence*

"Materiality requires 'an exculpatory value that was apparent before the evidence was destroyed' and that was 'of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" *Bower*, 497 F.3d at 476 (quoting *California v. Trombetta*, 467 U.S. 479, 489 (1984)). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). A defendant's reliance on "conclusory allegations in order to construct a constitutional deprivation" does not "establish any exculpatory evidence, let alone a reasonable probability that such evidence affected the outcome" of a proceeding. *United States v. Moore*, 452 F.3d 382, 388 (5th Cir. 2006) (holding

that defendant's conclusory assertion that withheld evidence created "the inability to contextualize the government's excerpts, the inability to effectively cross-examine the government's witness, and the need to avoid a perception of malfeasance" was not enough to demonstrate materiality).

Here, to demonstrate the materiality of the evidence, Defendant asserts that although it is "impossible to be certain without knowing the content of the recordings, there is a great possibility that the recordings provide exculpatory or impeachment evidence, as these recordings contain the interactions that resulted in [Defendant's] criminal complaint, and subsequent indictment." Objection 2. Further, Defendant argues that "[e]ven if the recordings do not provide contradicting evidence from the discovery reports produced by the undercover officer, these recordings are likely to provide exculpatory or impeachment context to existing evidence." *Id.*; *see also id.* at 3 (asserting the recordings "will contain pertinent, useful information regarding th[e] charges").

These conclusory statements are not enough. Defendant has not "describe[d] a single exculpatory fact that might have emerged from the lost [recordings], despite participating in each recorded [transaction]." *Moore*, 452 F.3d at 388. Nor does Defendant assert any fact that may contradict the evidence the Government sets forth to support probable cause, including discovery reports by the UCE that provide details regarding the time and location of the transactions, the names of the officers providing surveillance, drug price, quantity, and packaging, the vehicle Defendant drove during the transactions, the field test results, pictures of evidence bags in which drugs were kept after purchase, and the chain of custody of the drugs. *See* Opposition ¶ 8; *Bower*, 497 F.3d at 477 (holding that evidence was not material or exculpatory for purposes of *Brady* claim where the evidence did not "contradict the circumstantial evidence used by the state to convict Bower").

4

As such, the district court agrees with the Findings, Conclusions, and Recommendation that Defendant has failed to demonstrate any material exculpatory evidence contained on the audio or video recordings. At most, the lost evidence is "potentially useful" and Defendant, therefore, must demonstrate that the Government acted in bad faith when it lost it.

### B.  *Bad Faith Determination*

Defendant argues that the "Government['s] fail[ure] to provide the standard Dallas Police Department uses in preserving evidence" and the police department's "failure to keep the . . . recordings in compliance with the department standard" evidence bad faith. Objection 3. But the Fifth Circuit has declined to find bad faith where an agency did not abide by standard procedures to preserve evidence. *See United States v. McNealy*, 625 F.3d 858, 870 (5th Cir. 2010) (affirming district court's finding that Government's destruction of defendant's computer "as a result of miscommunication between divisions of the federal government" was "not in bad faith"); *Gentry v. Johnson*, 95 F.3d 1149, 1996 WL 481276, at *7 (5th Cir. 1996) (holding that Government's "negligent failure" to preserve evidence that the court ordered it to retain did not amount to bad faith).

Defendant has not set forth any other facts to support a bad faith determination, such as evidence that the Government or police "intentionally delayed" production of the evidence "to gain some tactical advantage" or "to harass [Defendant]." *Youngblood*, 488 U.S. at 57 (citation omitted). The loss of the external thumb drive containing the recordings, without more, does not amount to bad faith. Because Defendant failed to meet the burden of demonstrating either materiality or bad faith, the Court agrees with the Findings, Conclusion, and Recommendation that Defendant's due process claim fails. *See Bower*, 497 F.3d at 476.

## IV. CONCLUSION

For the reasons stated above, the Court **ACCEPTS** the Findings, Conclusions, and Recommendation of the United States Magistrate Judge [ECF No. 43] and **DENIES** Defendant's Motion to Dismiss the Indictment Due to Violation of Due Process [ECF No. 40].

**SO ORDERED.**

SIGNED February 9, 2023.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**